**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 07-113-SLR |
| | ) | |
| COREY ROANE | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S POST-HEARING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

Defendant Corey Roane has filed a Motion to Suppress Evidence (D.I. 15), seeking to

exclude all evidence seized from the defendant on August 1, 2007, as that evidence is allegedly

the fruits of an illegal search.  On December 19, 2007, the Court began an evidentiary hearing

during which Officers Mark Murdock and Michael Rennewanz of the Wilmington Police

Department (WPD) testified.[1]  The hearing was continued to permit defendant to properly

subpoena witnesses.  The hearing resumed on February 20, 2008, at which time Officer

Rennewanz completed his testimony.  A third part of the hearing was held on March 17, 2008, at

which time defendant called as witnesses Special Agent Paul Gemmato of the Bureau of Alcohol

Tobacco Firearms and Explosives (ATF), Officer Murdock, and Thomas Monahan, a private

investigator.  Over the course of the hearing, the government demonstrated by a preponderance

of evidence that the stop and search of defendant were the product of a valid *Terry* stop and

---

[1]The evidentiary hearing was initially scheduled for November 15, 2007.  However, the
case was reassigned and on November 2, 2007, the Court issued an order canceling that hearing
date.  Following a scheduling conference in late November, the hearing was rescheduled for
December 19, 2007.

accordingly, did not violate defendant's constitutional rights. For that reason and the reasons set forth below, the government respectfully requests that the Court deny defendant's motion.

## I.    PROPOSED FINDINGS OF FACT

On August 1, 2007, at approximately 3:00 P.M., WPD received a 911 call stating that a robbery had just occurred at the Temptations Ice Cream Parlor in the Trolley Square area of the city. The victim of the robbery provided a description of the suspect to WILCOM, which subsequently dispatched available units to the intersection of Delaware Avenue and DuPont, the location of the robbery. (12/19 Tr. 4-6.) In the initial transmission, the dispatcher, based on the information received from the victim just moments after the crime, described the suspect as a "black male on a ten speed bike, last seen wearing black t-shirt and a black doo-rag and shorts. Last seen headed Northbound on DuPont." (Gov. Ex. 1; 12/19 Tr. 8.)

Officer Murdock, riding alone in a marked patrol car, was in the area and responded to the dispatch call. (12/19 Tr. 9-10.) As Officer Murdock was heading eastbound on Lovering Avenue he observed a black male, later identified as defendant Corey Roane, heading northbound on DuPont, wearing a black doo-rag, and riding a ten-speed bicycle. (12/19 Tr. 10.) Although defendant did not match the description exactly (defendant was wearing jeans, not shorts), considering the similarities otherwise, Officer Murdock initiated a stop of defendant. Based on his training and experience, Officer Murdock knew that suspects may change their clothes after committing a crime in an attempt to elude police. With this knowledge and given that defendant was less than two city blocks away from the scene of the robbery, approximately five minutes after it occurred, and fit four significant identifiers of the suspect— black doo-rag, black male, on a bicycle, headed north on DuPont— he had a close match. Moreover, defendant

was the only person Officer Murdock observed in the area on a bicycle.  (12/19 Tr. 11-12.)

Defendant turned left off of DuPont and was heading westbound on Lovering as Officer Murdock's patrol car approached from the east.  Defendant, on his bicycle, cut across traffic on Lovering Avenue and was riding into opposing traffic, including Officer Murdock's car.  (12/19 Tr. 12.)  Officer Murdock stopped his car on Lovering, just west of the intersection with DuPont.[2]  At that point, defendant was approximately two feet in front of him straddling his bicycle, and the two men faced each other.  Officer Murdock radioed dispatch to let them know he had a suspect stopped.  (12/19 Tr. 12-14.)  He then got out of his car, walked towards defendant and asked that he step off of his bike.  As he approached defendant, Officer Murdock placed his hand on Roane's wrist and walked him to the police car.  Without prompting, defendant then went to Officer Murdock's car and placed his hands on the hood.  Officer Murdock then started a pat-down for officer safety.  As he got to defendant's right-side waistband he felt the handle of, what based on his training and experience, he believed to be a gun.  Officer Murdock removed the gun from Roane's waistband and handed it to Officer Rennewanz who had parked his car and approached defendant and Officer Murdock.  (12/19 Tr. 15-18.)  After handing Officer Rennewanz the gun, Murdock placed defendant in handcuffs and placed him in the back of his patrol car.[3]  (12/19 Tr. 17; 18-19.)  Officer Murdock estimated that

_____

[2]As Officer Murdock approached the intersection of DuPont and Lovering, he saw another marked police car, driven by Officer Rennewanz, heading south on DuPont.  Officer Rennewanz subsequently made a u-turn, stopped and got out of his car to assist Officer Murdock with the stop.  (12/19 Tr. 12.)

[3]Both Officer Murdock and Officer Rennewanz testified that the original report authored by Officer Rennewanz in connection with the case was inaccurate in so far as it read that defendant was handcuffed prior to the pat down search.  (Def. Ex. 1; 12/19 Tr. 37-38, 61-62; 2/20 Tr. 11.)  Neither had read the other's report prior to submitting them for approval to their

30-40 seconds elapsed between the time he got out of his car and the time he placed defendant in handcuffs. (12/19 Tr. 19.)[4] He also testified that at no point during the stop did Roane tell him he had a weapon and that at the time he made the stop, he did not know if, in fact, a weapon had been involved in the robbery. (12/19 Tr. 18, 20-21.) Officer Rennewanz corroborated Officer Murdock's testimony. According to Officer Rennewanz, he approached the scene as defendant was stepping off of his bike and moving to the hood of Officer Murdock's patrol car, at which time Officer Murdock began a pat down. (12/19 Tr. 58-59.) As Officer Murdock was with defendant, Officer Rennewanz was focused on making sure the area was secure and was looking around the area. When a third officer arrived at the scene, Officer Rennewanz spoke with him. (12/19 Tr. 59.)

Officers then took defendant back to Temptations to see if the victim of the robbery could positively identify him. The victim looked at Roane, hesitated momentarily, and concluded he was not the suspect in the robbery. (12/19 Tr. 24-25.) Defendant, however, was placed under arrest for possession of a concealed weapon. During processing, Officer Rennewanz became the primary officer responsible for the weapons charge. (12/19 Tr. 25.) Although Officer Murdock had made the initial stop, performed the pat down and discovered the gun, he and Officer

---

supervisors or was aware of the error in the other's report prior to preparing for the evidentiary hearing. (Tr. 12/19 Tr. 38, 67-68. ) The criminal complaint signed by Special Agent Gemmato also replicates this error. Prior to swearing out the criminal complaint, however, Special Agent Gemmato spoke only with Officer Rennewanz and based his affidavit on their conversation. (3/17 Tr. 5.)

[4]Gov. Ex. 1, a recording of WILCOM dispatch calls during the relevant time, supports this estimate. During the hearing, the government played the tape from the point Officer Murdock calls in the stop to the point after discovery of the gun when Officer Rennewanz inquires if a weapon was displayed in connection with the robbery. This segment is 53 seconds in duration. (12/19 Tr. 19-20.)

Rennewanz decided that because Officer Rennewanz had more experience on the force and with weapons charges, Officer Rennewanz would be listed as the primary officer in the case and Officer Murdock would be the assisting officer. (12/19 Tr. 23-24.) Thus Officer Murdock's report reads that he assisted Officer Rennewanz in the stop, frisk, and subsequent arrest of Roane.[5] (12/19 Tr. 23, Def. Ex. 2.)

## II.    ARGUMENT

Defendant challenges both the initial stop and subsequent frisk of defendant. Roane argues that the initial stop and frisk of defendant were not supported by reasonable suspicion and therefore any evidence flowing from that stop should be suppressed. In the alternative,

---

[5]Officers Murdock and Rennewanz did not speak with each other about the case between the events on August 1, 2007, and a preparation session for the evidentiary hearing at the United States Attorney's Office in mid-December 2007. (2/20 Tr. 4.) Special Agent Gemmato spoke with each officer on several occasions regarding scheduling of the preparation session, which changed a number of times. (3/20 Tr. 10.) Special Agent Gemmato also recalled having a conversation with Officer Murdock about "what happened," on August 1, 2007 and believed this conversation took place months in advance of the December meeting. (3/17 Tr. 10-12.) Officer Murdock did not recall this substantive conversation and testified that prior to the December meeting, he spoke with Special Agent Gemmato only regarding logistics. (12/19 Tr. 32, 3/17 Tr. 34.)

A preparation session was held in the days prior to the December 19, 2007 evidentiary hearing. (3/17 Tr. 9-10.) Officer Murdock, Officer Rennewanz, Special Agent Gemmato and Assistant United States Attorney Lesley Wolf attended the meeting. (2/20 Tr. 4.) Special Agent Gemmato was not present for the entire meeting. (2/20 Tr. 8; 3/17 Tr. 15.) Officers Murdock and Rennewanz and Special Agent Gemmato had differing recollections regarding the duration of the meeting and the precise length and sequence of which portions Special Agent Gemmato was present for. Recollections regarding the details of those meetings were also somewhat hazy. Given that the testimony took place at least two months, in the case of Officer Rennewanz, and three months, in the cases of Officer Murdock and Special Agent Gemmato, following the preparation session, the lack of specific recollection and inconsistencies are understandable and insignificant. Regarding the most salient features— that a meeting took place, the four individuals set forth above were present, and that the arrest of defendant was discussed in order to prepare for the suppression hearing— the testimony was consistent.

defendant also argues, based on his assertion that he was handcuffed before he was frisked, that at the point he was placed in handcuffs, he was under arrest and that there was no probable cause to support the arrest. Neither argument prevails. The government met its burden in showing by a preponderance of evidence that there was reasonable suspicion to support the initial stop and pat down of defendant. Even if the Court rejects the testimony of Officers Murdock and Rennewanz in favor of the facts as recited in Officer Rennewanz's arrest report, the fact that defendant was handcuffed does not convert the *Terry* stop into an arrest requiring probable cause. Accordingly, defendant's motion should be denied.

### A.    Officer Murdock Had Reasonable Suspicion to Stop and Frisk Defendant.

"[U]nreasonable searches and seizures" are prohibited by the Fourth Amendment. U.S. Const. amend IV. Generally, a warrant based upon probable cause is required for a search. However, where a police officer has a reasonable articulable suspicion of criminal activity, analyzed at the moment of the stop, the officer may conduct a brief investigatory stop. *See United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) *citing Terry v. Ohio*, 392 U.S. 1 (1968). This exception to the warrant requirement arises because essential police functions require "necessarily swift action predicated upon on-the-spot observations of the officer on the beat," *Terry*, 392 U.S. at 20, and extends not only to imminent and in progress crimes, but completed felonies as well. *See United States v. Hensley,* 469 U.S. 221, 229 (1985) ("if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion"); *Brown*, 448 F.3d at 244 n.7 (applying *Terry* analysis to stop even though crime had been completed). The reasonable suspicion standard

requires that the officer making the stop have a particularized and objective basis for the suspicion that the person being stopped is involved in criminal conduct and analyzes the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *see also United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004).

### 1. Officer Murdock had reasonable suspicion to stop defendant.

Here, the totality of the circumstances show that Officer Murdock had reasonable suspicion when he stopped defendant based upon his personal observation of defendant's close resemblance to the description of the robbery suspect contained in the dispatch broadcast. The information underlying the WILCOM dispatch description stemmed from another source— the 911 call made by the victim of the robbery. Accordingly, both the reliability and content of that "tip" must be considered as a part of the totality of the circumstances. *See United States v. Goodrich*, 450 F.3d 552, 559-60 (3d Cir. 2006). Although, defendants often challenge anonymous tips or fleeting third party observations, in the instant circumstances, defendant can raise no genuine issue with regard to the source of the information. The description given to the police was provided by someone with direct involvement in the underlying criminal conduct— the robbery victim. Her exposure may have been brief, but she had a close and personal observation of the perpetrator and promptly relayed that information to the police. The victim made herself known to law enforcement and could therefore be held accountable for any false information she provided. Moreover, the information was sufficiently specific to support reasonable suspicion. Not only did it include the race and gender of the suspect, it extended to the clothing, including a noticeable hair accessory, and mode of transportation. Thus, the statements from the victim set a reliable foundation for Officer Murdock's objective and

reasonable suspicion. *See, e.g., United States v. Nelson*, 284 F.3d 472, 480 (3d Cir. 2002) *quoting Adams v. Williams*, 407 U.S. 143, 147 (1972) (victim descriptions of assailants given to police sufficiently reliable to support appropriate police action); *United States v. Nobles*, 2007 WL 2844894 at *2 (E.D. Pa. Sept. 27, 2007) (reasonable basis for officers to stop defendant where he matched physical description of robbery suspect given to police by victim).

Taken in conjunction with the dispatch call, Officer Murdock's direct observation of defendant also supports a finding that an objective basis for his reasonable suspicion existed. The dispatch description Officer Murdock heard included six descriptors: (1) a black male; (2) on a ten-speed bike; (3) wearing a black t-shirt; (4) a black doo-rag; and (5) shorts; (6) heading north on DuPont.  (Gov. Ex. 1; 12/19 Tr. 8.)  Defendant fit five of these six descriptors in that at the time he was observed by Officer Murdock, he was: (1) a black male; (2) on a ten-speed bike; (3) wearing a black t-shirt; and (4) a black doo-rag; (5) heading north on DuPont.  (12/19 Tr. 10-11.)  The only difference between defendant and the radio description was that defendant was wearing jeans and the suspect was reported to be wearing shorts.  Although cognizant of this lone difference, Officer Murdock stopped defendant because he fit the most salient descriptors and in his training and experience learned that criminals sometimes change their clothes in attempt to avoid police detection.  (12/19 Tr. 11.)  On cross-examination, Officer Murdock testified that when he observed defendant he was not carrying any additional items of clothing or bags in which clothing might be contained.  However, he did not view this as significant, because in his experience, criminals dispose of the identifying clothing, rather than carrying it with them.  (12/19 Tr. 43,51-52.)  Other than challenging Officer Murdock on this point, defendant left virtually untouched Officer Murdock's statement that defendant closely matched

8

the description of the robbery suspect.

Further supporting Officer Murdock's reasonable suspicion was the fact that defendant was the only individual he observed on a bicycle in the area and that he was only two blocks away from the robbery, approximately five minutes after it occurred. The totality of the circumstances, the close match of the physical description and the geographical and temporal proximity to the underlying crime, support the conclusion that Officer Murdock had the requisite suspicion to conduct an investigatory stop of defendant. *See, e.g., Goodrich*, 450 F.3d at 562 (temporal and geographic proximity to reported criminal activity and being only vehicle in area supports reasonable suspicion); *United States v. Harple*, 202 F.3d 194, 196-97 (3d Cir. 1999) (reasonable suspicion for *Terry* stop where car "substantially matched the description" given to police). *Compare Brown*, 448 F.3d at 248 (no reasonable suspicion where "general description" given to officers "hardly close" to actual traits of defendant).

### 2.    Officer Murdock's pat down of defendant was permissible.

In the course of a *Terry*, stop police may take actions that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *Hensley*, 469 U.S. at 235. This includes conducting a protective frisk of a suspect for concealed weapons so as to ensure the safety of the officers. *Terry*, 392 U.S. at 24. Indeed, "there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. *Id.* at 23.

Here, Officer Murdock conducted a pat down of defendant and in the course of the pat down discovered a gun. As with the initial stop of defendant, the pat down was supported by

reasonable suspicion. Officer Murdock stopped the defendant because he closely matched the description of a suspect in a robbery that had occurred moments before. At the time he made the stop, no information had been provided as to whether a weapon had been displayed in the course of that crime. Officer Murdock simply did not know whether or not defendant was armed at the point he stopped defendant. (12/19 Tr. 20-21.) Because he had the reasonable suspicion that defendant was a participant in criminal activity— the robbery— he was entitled to also conduct a pat down search of the defendant. Indeed, the "stop and frisk" appear to go hand in hand. *See, e.g., Brown*, 159 F.3d at 149 (discussing cases involving "stop and frisk"); *United States v. Robertson*, 305 F.3d 164, 170 (3d Cir. 2002) (limited search for weapons justified when officers had reasonable belief suspects armed and dangerous); *United States v. Mendoza*, 2007 WL 1795663 at * 1 (W.D. Pa. June 20, 2007) (where government demonstrated reasonable suspicion criminal activity afoot "patdown search" proper);

A *Terry* frisk must be limited in scope to a search for weapons that may pose a safety threat. *Terry*, 392 U.S. at 26. Here, there is no allegation and no evidence that the pat down exceeded its permissible scope.[6] As defendant stepped off of his bike, Officer Murdock took control of his wrist. With little to know further instruction, defendant voluntarily placed his hands on the hood of Officer Murdock's car. Officer Murdock then started a pat-down beginning at defendant's head and traveling down the right side of his body. As he got to the waistband of defendant's pants he felt the butt of a gun. (12/19 Tr. 15-17.) The butt of the gun

---

[6]There is, of course, an issue as to whether the frisk took place before or after defendant was placed in handcuffs. Because the frisk must be considered in the *Terry* context regardless, the present discussion applies under either factual finding. The factual and legal issues surrounding this dispute are discussed *infra*.

was protruding from defendant's waistband and was easily recognizable to Officer Murdock, as a trained police officer experienced in conducting protective frisks, as a gun.  (12/19 Tr. 17-18.)

Because the government has met is burden and shown based on a preponderance of evidence that there was reasonable suspicion for the stop and frisk of defendant, there is no basis for the suppression of evidence and defendant's motion should be denied.

### B.    The Evidence Should Not Be Suppressed Regardless of When Defendant Was Placed in Handcuffs.

The facts at the evidentiary hearing establish, by a preponderance of the evidence, that defendant was not handcuffed at the time Officer Murdock performed the pat down search and discovered the gun.  Accordingly, the *Terry* stop and frisk were soundly based upon reasonable suspicion and defendant's motion should be denied.  However, the government expects that defendant will argue that the government did not meet its burden of establishing that Roane was not handcuffed at the time of the search, and will argue instead that the Court should find the facts as they were stated in Officer Rennewanz's report (Def. Ex. 1)— that defendant was handcuffed for officer safety purposes prior to the pat down and discovery of the gun.[7]  This argument fails on the facts as the evidence does not support this claim.  Moreover, even if the Court finds that defendant was handcuffed before the pat down, the fruits of the search should not be suppressed.  As set forth below, use of handcuffs in such a scenario does not convert a

---

[7]There is no indication or allegation of any alternative version of events.  Defendant was stopped, frisked, and a gun was discovered in his waistband.  He was placed in handcuffs.  The sole material factual issue in dispute is whether he was frisked before or after he was handcuffed.

*Terry* stop and frisk into a custodial arrest requiring probable cause.[8]

### 1.    Defendant Was Not Handcuffed at the Time of the Pat Down.

As stated above, the evidence conclusively shows that Officer Murdock performed the pat down and discovered the gun prior to handcuffing defendant.  The inconsistency with Officer Rennewanz's report and Special Agent Gemmato's affidavit do not require a different result.

Officer Murdock's statements and testimony on this most salient issue have been consistent in his report, in the preparation session, and on both dates of his testimony at the evidentiary hearing.  Immediately following the events on August 1, 2007, Officer Murdock authored a supplemental report in connection with the arrest of defendant.  The report states, in relevant part that defendant:

> was riding a bike, northbound on Dupont St., suspect was stopped at
> Dupont and Lovering; suspect was told to get off the bike and place
> his hands on this officer['s] marked patrol vehicle.  Individual was advised
> he matched the description of a robbery suspect, during a pat down of the
> above suspect this officer felt what appeared to this officer as a handle to a
> handgun....  Suspect was placed into custody without incident.

(Def. Ex. 2.)  Officer Murdock makes no specific mention of handcuffing defendant— either to say he did nor did not place Roane in handcuffs at any particular point— but a logical and fair reading of his report is that the events he does discuss are listed in the sequence they occurred.

---

[8]In light of the specificity and reliability of the description of the robbery suspect and defendant's almost identical resemblance to that description, the government does not concede that Officer Murdock lacked probable cause to arrest defendant.  *See Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979) (stating that probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense") (citation omitted)*.  Compare United States v. Kithcart*, 134 F.3d 529, 532 (3d Cir. 1998) (no probable cause to arrest a lone black male in a black Nissan sports car, based on description of suspects as two black males in a black, likely Chevy, sports car).

"Custody," which may be read to mean "handcuffed" is not mentioned until after the pat down is complete and the gun is found. With regard to the sequence of events on August 1, 2007, Officer Murdock's testimony is wholly consistent with his report. Indeed, despite the fact that he testified on two separate occasions, defendant never showed Officer Murdock his report or challenge him regarding its content, instead focusing on Officer Rennewanz's report, which all of the witnesses readily admitted was inaccurate. When asked what happened during the preparation session at the United States Attorney's Office, Officer Murdock again articulated that he stopped defendant, frisked defendant, found a gun, and then placed defendant in handcuffs. (2/20 Tr. 14.) Describing the events of August 1 on the witness stand, Officer Murdock articulated the same version of events yet again— he stopped, frisked, and then cuffed defendant. (12/19 Tr. 15-19.) And in retelling at the conclusion of the evidentiary hearing, Officer Murdock said he frisked then cuffed defendant. (3/17 Tr. 37.) Over the course of almost eight months, Officer Murdock consistently and unequivocally maintained that the events happened in the sequence he described at the hearing— Roane was not in handcuffs at the time he was frisked.

Defendant may seek to attack Officer Murdock's credibility on this point by errors or inconsistencies in other areas of his testimony. These inconsistencies are immaterial and do not undermine Officer Murdock's credibility. To the extent his testimony is inconsistent with Officer Rennewanz's report, Officer Rennewanz acknowledged that although he believed it to be accurate at the time he wrote it, his report was incorrect in its sequence. Officer Rennewanz offered a credible explanation for the error— as the second officer to arrive on the scene, he was responsible for making sure the area was secure and was focused on looking around and

13

speaking with a third officer who had arrived at the scene. (12/19 Tr. 59.)[9]  Given that the entire

incident took less than a minute, (12/19 Tr. 19-20), during which time Officer Rennewanz was

paying close attention to things other than the stop itself the mistake in the report is

understandable.  While regrettable in so far as it has caused some confusion, when considering

the totality of the circumstances, the error in the report does not mandate discrediting the

testimony of both police officers at the suppression hearing.[10]

### 2.    Even if Defendant Was Handcuffed, He Was Not Under Arrest.

Even if the Court determines that defendant was handcuffed at the time of the pat down

search, the stop was still a *Terry* stop and was supported by the reasonable suspicion discussed

*supra*.  "[W]hen police officers make an investigative stop, they may take such steps as are

'reasonably necessary to protect their personal safety and to maintain the status quo during the

course of the stop.'" *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir.1995) *quoting Hensley*,

469 U.S. at 235.  In a *Terry* stop, law enforcement authorities are not limited to a simple stop and

frisk.  When justified by the circumstances of a particular stop, courts have repeatedly found that

police may use such techniques as approaching with weapons drawn, blocking a suspect's car, or

ordering a suspect out of the car in a certain manner without converting an investigatory stop

---

[9]Moreover, Officer Rennewanz also made clear his belief that it would have been entirely proper for Officer Murdock to handcuff defendant prior to performing the pat down. (12/19 Tr. 63; 2/20 Tr. 27.)  Based on this understanding, there is no credible incentive for him to change his testimony in the context of a suppression hearing.

[10]Because the search is constitutionally permissible under either set of circumstances, no motive exists for witnesses to alter their testimony.  While the officers understood it to be a suppression hearing, neither had read defendant's motion or was told that evidence would be suppressed if they testified to a certain version of events.  The goal of preparation was to be correct and accurate in their testimony.  (2/20 Tr. 19-20.)

into an arrest. *Id.* (citing cases). Courts have also upheld the use of handcuffs in the *Terry* context. As this Court has found, "there is no per se rule that the use of handcuffs...constitutes an arrest." *United States v. Prince*, 157 F. Supp.2d 316, 325 (D. Del. 2001). *See also, e.g., United States v. Newton*, 369 F.3d 659, 675 (2d Cir. 2004); *United States v. Hamlin*, 319 F.3d 666, 671 (4th Cir. 2003); *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999) *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1993); *United States v. Saffels*, 982 F.2d 1199, 1206 (8th Cir. 1992) (*rev'd on other grounds*); *United States v. Davis*, 2007 WL 2173394 at *8-9 (E.D. Pa. July 27, 2007); *United States v. Goode*, 2006 WL 3025885 at *3 (E.D. Pa. Oct. 20, 2006).

Here, if defendant was handcuffed, Officer's Murdock's decision to place him in handcuffs would have only been "was reasonably related in scope to the circumstances which justified the interference in the first place." (12/19 Tr. 19-20.)  *Terry*, 392 U.S. at 20. Officer Murdock stopped defendant because he matched the description of a suspect in a robbery that had taken place moments before and at the time he made the stop, he had no information as to whether or not a weapon had been used or displayed in the course of that robbery. (12/19 Tr. 20-21.) Thus for officer safety reasons it would have been, under the circumstances, reasonably necessary to secure the defendant in handcuffs during the search and the scope of any such intrusion would have been proportional to the attendant risks. Any intrusion would have been minimal. Defendant was approached by the police, handcuffed, frisked, and placed under arrest (after discovery of the gun) all in less than a minute. (12/19 Tr. 19-20.) *See Edwards*, 53 F.3d at 620 (length of detention in relation to circumstances one factor in determining if *Terry* stop has ripened into arrest); *see also Dennis* 2007 WL at *8 (upholding *Terry* stop, finding "[i]n

particular, there is no evidence that the stop was unreasonably long."). Under any version of

events, this is not a case where defendant was handcuffed for an extended period of time or

placed in the back of a police car while calls were made or other information was gathered— he

would have been handcuffed just long enough for Officer Murdock to safely determine whether

he was armed. Courts have held intrusions far more significant than this one would have been to

be justified in the *Terry* context. *See, e.g., Prince*, 157 F. Supp.2d at 325 (defendant not under

arrest even though handcuffed and placed in back of police car); *United States v. Burton*, 193

F.R.D. 232, 239 (E.D. Pa. 2000) (still *Terry* stop where suspect handcuffed in back of police car

for "less than an hour"); *United States v. McGrath*, 89 F. Supp.2d 569, 578 (E.D. Pa. 2000)

(lawful investigatory stop where defendant handcuffed, placed in patrol car, and subject to 40-50

minute delay prior to identification in show-up).

Nor was Officer Murdock obligated to use the "least intrusive means" in conducting the

stop. A rule limiting officers to the least intrusive means "would unduly hamper the police's

ability to make swift, on-the-spot decisions." *United States v. Sokolow*, 490 U.S. 1, 11 (1989).

Officer Murdock was required to make an almost instantaneous decision as how best to preserve

his own safety in the course of investigating defendant as a suspect in a robbery.[11] The decision

to handcuff defendant for a brief period, in the absence of information about whether a weapon

was used in that robbery, would have been reasonably necessary and proportional to the

---

[11]Based on the questions asked at the hearing, it appears that defendant will argue there is no WPD "policy" permitting officers to handcuff defendants for officer safety purposes during a *Terry* stop. Defendant's witness, Mr. Monahan also testified that there is no policy that forbids such an action. (3/17 Tr. 49-50.) This lack of policy is consistent with the Supreme Court's recognition of the need for law enforcement to make flexible and on-the-spot decisions as how to best carry out their responsibilities in a safe manner.

circumstances of the case.  Briefly placing defendant in handcuffs for officer safety purposes would not convert the investigatory stop of defendant into a custodial arrest and would have been amply supported by reasonable suspicion.  Accordingly, there would have been no violation of defendant's constitutional rights and there is no basis for suppression of the evidence seized during the pat down search.

## III.    CONCLUSION

WHEREFORE, for the reasons set forth above, the United States respectfully requests that the Court deny defendant's Motion to Suppress Evidence.              .

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY:    /s/ Lesley F. Wolf
       Lesley F. Wolf
       Assistant United States Attorney
       The Nemours Building
       1007 Orange Street, Suite 700
       Wilmington, Delaware 19899-2046
       (302) 573-6277
       lesley.wolf@usdoj.gov

Dated: April 28, 2008

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 07-113-SLR |
| | ) | |
| COREY ROANE | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER</u>**

AND NOW, this _____ day of _____, 2008,

upon consideration of Defendant's Motion to Suppress Evidence (D.I. 15), and the

Government's response thereto, it is hereby ORDERED that defendant's motion is DENIED.

By the Court:


_____

Hon. Sue L. Robinson
Judge, United States District Court