## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-113-SLR |
| | : | |
| COREY ROANE, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT ROANE'S ANSWERING BRIEF IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE

Defendant, Corey Roane, by and through his Counsel, Christopher S. Koyste, hereby files this Answering Brief in support of his Motion to Suppress Evidence, in response to the Government's post-hearing brief.    In addition, this Answering Brief will respond to the Government's October 26, 2007 Memorandum of Law in Response to Defendant's Motion to Suppress Evidence.  The Defense asserts that: (1) Sufficient facts were not elicited at the evidentiary hearings to demonstrate a reasonable belief that Mr. Roane could have been involved in criminal activity, which is required by Terry v. Ohio, 392 U.S. 1, 10 (1967) in order for law enforcement to conduct a stop; (2) Mr. Roane was handcuffed before he was frisked by Officer Murdock constituting a seizure which requires probable cause, which is lacking based upon the facts that were substantiated on the record; (3) Even if Mr. Roane was not handcuffed before he was frisked, Officer Murdock failed to sufficiently "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the frisk of Defendant.  United States v. Hall, 193 Fed. Appx. 125, 128 (3rd Cir 2006); (quoting Terry, 392 U.S. at 27.); (4) The statement of Mr. Roane was directly related to the illegally seized firearm and is a fruit of the poisonous tree

which must be suppressed for use during the Government's case in chief at trial.

## I.    RELEVANT TESTIMONY AT THE EVIDENTIARY HEARINGS.

During Officer Murdock's testimony at the December 19, 2007 evidentiary hearing the following facts were elicited: A detailed description of the suspect of the Temptations robbery was issued by the Wilmington Police Department dispatcher with no indication that the suspect was armed (Pages 20, 21); The dispatch description of the suspect noted that the individual had on a pair of shorts (Pages 8, 11); Officer Murdock testified that although the suspect of the Temptations robbery wore shorts, he stopped the suspect anyway, noting "(i)n my history with the Police Department that suspects that just committed a crime may disrobe, change, hide for a particular time, to change their – their look, to get away from that crime." (Page 11); At the time of the stop Mr. Roane ceased riding his bike and got off when ordered to by Officer Murdock, didn't make any furtive movements, didn't try to run, and didn't appear nervous (Page 51); Mr. Roane did not have any clothing or bags in his possession when Officer Murdock encountered him (Page 40); Other than on the day of Mr. Roane's arrest when Officer Murdock spoke to Officer Rennewanz, Officer Murdock claimed that the only person he spoke to in this case was Ms. Wolf (December 19, 2007 Page 33, March 17, 2008, Pages 32, 33); Murdock testified that "Officer Rennewanz has more experience on the force than I do...(h)e has been on longer." (December 19, 2007, Pages 23, 24); At the time of the December 19, 2007 evidentiary hearing Officer Murdock was on the Wilmington Police Force less than 3 years.  (December 19, 2007, Page 2)

Officer Rennewanz testified at the December 19, 2007 evidentiary hearing to the following: That he observed the frisking of Mr. Roane from a distance of approximately 12 feet (Page 59); During the December, 2007 preparation session at the Untied States Attorney's Office that he and Officer Murdock discussed with each other and "the other attorneys" his alleged mistake about the

timing of the handcuffing of Mr. Roane as was described in Officer Rennewanz's police report (Page 67, 68); Officer Rennewanz did not recall who at the preparation session raised the topic of the timing of the handcuffing of Mr. Roane (Page 68); Officer Rennewanz was sitting with Agent Gemmato when he wrote his affidavit, which was presented to the Court as Defense Exhibit "3" (Page 64); At the time of the December 19, 2007 evidentiary hearing Officer Murdock was on the Wilmington Police Force less than 3 years (Page 56).

Officer Rennewanz also testified at the February 20, 2008 evidentiary hearing to the following: Officer Rennewanz recalled hearing Officer Murdock tell Mr. Roane to place his hands on the hood of his car (Page 25); Officer Rennewanz was with Officer Murdock, Agent Gemmato and Ms. Wolfe at the beginning of the preparation session at the United States Attorney's Office, while Agent Gemmato later left at some point and did not return (Pages 7-9); At this preparation session Agent Gemmato introduced everyone so that they "could come together on a (or the) report[1]" (Page 13); At this preparation session Ms. Wolfe read the section of Officer Rennewanz' report which pertained to the handcuffing and frisking of Mr. Roane (Page 15, 16); Rennewanz claimed that at the preparation session that he did not believe that the handcuffing preceded the frisk of Mr. Roane (Page 17); Rennewanz claimed that it was stressed at this preparation session that they "had to be correct in the sequence" of when the handcuffing and frisking took place (Page 18).

Agent Gemmato testified at the March 17, 2007 evidentiary hearing to the following: that he obtained the information about this case initially from a conversation with Officer Rennewanz (Pages 3, 5, 7); Contrary to Officer Murdock's testimony, Agent Gemmato noted that prior to the meeting at the United States Attorney's Office that he and Murdock previously had a detailed

---

[1] The Court is free to find this statement rather telling of how this meeting was perceived by those attending, and what the goal of the meeting was.

conversation about the frisk and arrest of Mr. Roane (Pages 10, 11); Agent Gemmato was not present when Ms. Wolf read the portion of Officer Rennewanz's report in relation to the handcuffing and frisk of Mr. Roane, and thus was not a witness when Ms. Wolf prepared them for the evidentiary hearing (Page 18); During the December preparation session at the United States Attorney's Office Agent Gemmato "believed" that Officer Rennewanz stated something to the effect of "I really didn't see it" or "I was farther away from you" which contradicts Rennewanz's testimony that he observed the frisk from approximately 12 feet away (Page 59).

## II.    ARGUMENT IN RELATION TO FACTUAL FINDINGS THAT THE COURT MUST MAKE.

The Government's first filing with the Court in response to Defendant's Motion to Suppress was its October 26, 2007 Memorandum of Law in Response to Defendant's Motion to Suppress Evidence and Statements, wherein the Government agreed with the Defense's overall theory that Mr. Roane was handcuffed before he was frisked; as is also described in the police report of Officer Rennewanz (Defense Exhibit "1" presented at the Suppression Hearings) and in the Affidavit in Support of Complaint authored by Special Agent Paul Gemmato (Defense Exhibit "3").    The Government in this filing asserted that "The officers had reasonable suspicion to stop Mr. Roane and that placing him in handcuffs was reasonably necessary to ensure officer safety." (See Government's Motion at Page 3). The Government magnified its position by noting "(a)t the time they approached Mr. Roane it was not clear whether the suspect in the theft had brandished a weapon during the course of he (sic) they were investigating" and that the "officers conducted the pat down search of Defendant almost immediately after placing him in handcuffs." Id. Obviously, the Government had enough of a reason to believe the accuracy of the facts that they asserted when they described these facts in their filing with Your Honor.

4

A.     Officer Murdock failed to satisfy the <u>Terry</u> standard when testifying as he did not state a reasonable and articulable basis for believing that Mr. Roane was involved in a crime, and that he could have been armed.

A review of the testimony during the three evidentiary hearings reveals that Officer Murdock failed to establish enough facts to support a reasonable belief that Mr. Roane was involved in criminal activity in order to support a stop and that he could have been armed which would permit a frisk. Although Mr. Roane certainly had some similar visual characteristics with the person who robbed a woman at the Temptation store, much effort is taken by the Government and Officer Murdock to try and minimize the critically important fact that the robber of Temptations had shorts on, and Mr. Roane was observed with pants on. The standard is reasonableness, and it is entirely impractical to believe that a robber strategized that he would have on a pair shorts to commit a robbery and carry with him as an after-crime disguise of a pair of pants so that he could cease fleeing the scene of the robbery to put on these pants, and then continue to flee in his new disguise; yet, this is the kind of "logic" that the Government and Officer Murdock presented to the Court to try and convince Your Honor that Officer Murdock's decision to stop and then later to frisk was based on rational, factual inferences. The Defense asserts that this reasoning is anything but a reasonable and rational inference.

Officer Murdock concretely demonstrates the absurdity of the concept of a criminal carrying extra clothes with him during the Government's redirect at the December 19th hearing. Ms. Wolf asked "(a)nd when suspects change their clothes after committing a crime, do they tend to carry extra clothing with them?" (December 19, 2007 Pages 50, 51) Officer Murdock replied "No....they tend to actually wear clothing over top of clothing so they won't actually have to disrobe and then rerobe. They just disrobe and keep running." <u>Id.</u> Defense Counsel asked Officer Murdock a similar question to which he could not agree that if someone was to try and change clothing that they would

change their shirt.    (December 19, 2007 Pages 50, 51)  The fact that Mr. Roane was wearing pants

at the time that Officer Murdock encountered him is a rather weighty fact that leads one to the

conclusion that Mr. Roane did not commit this robbery.  Thus, the fact that his clothing did not

match the radio call greatly diminishes the Government's contentions.[2]  The Third Circuit has noted

that "(t)he fact that every detail provided (in a description) matched the details observed by the

officers can contribute to a finding of reasonable suspicion." United States v. Brown, 448 F.3d 239,

247 (3rd Cir. 2006); See also, United States v. Nelson, 284 F.3d 472, 483 (3rd Cir. 2002).  Thus, in

a situation like this where a critical fact (the pants) is completely inconsistent with a description of

a suspect, reasonable suspicion was not satisfied by the Government.

In relation to the subsequent frisk of Mr. Roane, the Government's contentions are even more

weak when trying to meet the described Terry frisk standard.  The fact that Mr. Roane was wearing

pants when he was stopped and frisked by Officer Murdock makes it very unlikely that he would

have been the individual who committed the robbery at Temptations as is outlined in the above

paragraphs.  Additionally, Mr. Roane's demeanor is not one that supports an inference that he could

have been armed as he was cooperative at all stages in that he stopped riding his bike and got off

when requested, didn't make any furtive movements, didn't try to run, and didn't appear nervous.

 (December 19, 2007 Pages 50, 51)    In essence, Mr. Roane submitted to the will of Officer

Murdock.  There were no visible bulges on Mr. Roane's person which could provide a basis to

believe he could have been armed.  Also, the fact that the there was no indication of whether the

person who committed the Temptations robbery was armed does not in turn support an inference that

---

[2]  The cases cited by the Government in relation to Terry stops do not address the issue of
how to assess a critical fact that would cleary distinguish an individual from the description of
someone who committed a crime.

they were armed with a weapon. The most logical conclusion from the fact that there was not an indication whether the robber was armed, is that he was not armed.

Of critical importance to resolving the basis to frisk issue is that Officer Murdock completely failed to testify to specific and articulable facts to support a belief that Mr. Roane could have been armed. See Hall, 193 Fed. Appx. at 128; Terry, 392 U.S. at 21. Ms. Wolf asked Officer Murdock "Why did you perform a pat-down" of the defendant. (December 19, 2007 Page 17) Instead of articulating specific facts, Officer Murdock issued a non-specific, almost generic, response: "Through experience and through safety, taught by the department, it's always good to perform a pat-down for weapons for our safety." Id. Officer Murdock articulated absolutely no facts and simply claimed that he can always perform a pat-down for his safety. Officer Murdock provided the kind of cursory basis of believing that he can frisk at any time he would like to (i.e. "always good to") which has been found to be unreasonable and in violation of Terry. See Hall, 193 Fed. Appx. At 128; Ybarra v. Illinois, 444 85, 92-93 (1979); United States v. Ritter, 416 F.3d 256, 268-269 (3rd Cir. 2005) Murdock's response is even less compelling than a mere "unparticulized suspicion or hunch" which also is in violation of Terry. Terry, 392 U.S. at 27; United States v. Sokolow, 490 U.S. 1, 7 (1989). Thus, it is apparent that this Court must find that the Government has failed to meet its burden of proof to establish a basis to perform a Terry frisk.

**B.    Mr. Roane was handcuffed before he was frisked, which was a seizure requiring probable cause.**

This issue may not be reached by the Court as Your Honor can find that the stop or the frisk of Mr. Roane violated Terry, leading to the suppression of the firearm as it would be a fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963). However, if the Court does not so rule, then the Court will first need to make the determination of whether the Government has

proven that the handcuffing occurred after the frisk of Mr. Roane (which the Defense contends did not happen), and thereafter, whether the handcuffing of Mr. Roane under such circumstances qualifies as a seizure which requires probable cause.

The factual scenario before the Court is truly unique. The Government already filed a Memoranda with the Court on October 27, 2007 describing that the handcuffing preceded the frisk of Mr. Roane's person. Yet, even with this representation to the Court in its Memoranda, combined with the contemporaneously drafted and signed police reports, and affidavit of a federal agent that support this conclusion, the testimony at the evidentiary hearings was that Mr. Roane was **not** handcuffed until after a firearm was found on his person.

It is only reasonable to conclude that Officer Rennewanz's recollection of his observation of the handcuffing of Mr. Roane would have been dramatically better within hours of when the event occurred on August 1, 2007. Furthermore, the most reasonable conclusion is that Officer Rennewanz wrote in his report actually what he actually observed happen. This is made even more of a reasonable conclusion when considering that Officer Murdock and Officer Rennewanz had a conversation about the arrest of Mr. Roane on the day of the event. (December 19, 2007 Page 33) Additionally, the way that Officer Rennewanz went about writing his report, and describing the incident to Agent Gemmato, shows that he wanted to be sure to describe exactly **why** he believed that Officer Murdock's action of handcuffing Mr. Roane before the risk was permissible; hence the inclusion in Rennewanz's report of the notation that the handcuffing was for safety purposes, and in Gemmato's report that the handcuffing was pursuant to police policies. (See Defense Exhibits "1" and "3" at paragraph 6) It is only reasonable to conclude that a young and rather inexperienced (less than 4 years on the force) police officer would want to buttress the facts that he observes by supplying a policy reason in his report and to Agent Gemmato why the described conduct was

8

considered to be "by the book."

A plain reading of Officer Murdock's report leaves the reader with the conclusion that he never mentions when he handcuffed Mr. Roane.  (See Defense Exhibit "2") Thus, by leaving out this important detail, his report is not contradictory to Officer Rennewanz's report since it is silent in reference to handcuffing.

Although Officer Rennewanz is not a seasoned veteran of the Wilmington Police Force, he understands the importance of including accurate information in police reports as they are often used to refresh recollections during trials and hearings.  Furthermore, Officer Rennewanz had another opportunity within a few hours of the event to re-account exactly what took place.  This occurred when he sat down with Special Agent Gematto prior to when the agent formally signed his Affidavit in relation to this case on August 2, 2007.

In addition, the Defense has outlined relevant factual testimony in the above paragraphs which not only show marked differences, but raise the suspicion as to whether leading questions were used when "preparing" Officers Murdock and Rennewanz at this session at the United States Attorney's Office where the police officers were to "come together on a (or the) report."  The Defense asserts that there are too many inconsistencies and baffling occurrences for the Court to conclude that the can meet its burden of proof to establish whether the frisk of Mr. Roane did precede his handcuffing.

Other Delaware courts have considered the issue as to how to resolve conflicts between facts included in a contemporaneously drafted police report, and testimony at trial or hearing which occurs a considerable time later.  These Courts have taken the position advanced by the Defense that a court should "give greater weight to the contemporaneous reports generated by the officers," rather than to the testimony at a suppression hearing that differs from the facts included in those reports.  State

of Delaware v. Hicklin, 2000 Del. Super. Lexis 234 at page 9; See also, State of Delaware v. Irons, 2001 Del. Super. Lexis 478 at pages 7 and 8, footnotes 1 and 2. Thus, there is support for this Court to give greater weight to the issued police reports which supports a finding that the Government has failed to prove that the handcuffing occurred after the frisk. To make this finding, the Court does not need to find that anyone testifying was not being honest, but merely that the Government's burden of proof has simply not been met.

Having concluded that the frisk occurred after the handcuffing of Mr. Roane, what next needs to be determined is whether there is a special reason as to why Officer Murdock needed to exercise so much control over Mr. Roane that he had to resort to the use of handcuffs to completely curtail his liberty. None of the cases cited by the Government at pages 14 through 17 of its brief are truly on point with the facts in this case as are outlined above. This is because Mr. Roane differed from the robber of Temptations in an important aspect, his pants, and Mr. Roane was completely cooperative with Officer Murdock and was already completely under his control as he was spread eagle on his patrol car .

In United States v. Melendez-Garcia, 28 F.3d 1046. 1052 (10th Cir. 1993), cited by the Government on page 15 of its brief, the 10th Circuit noted that the "Government has not met its burden of showing that, under the totality of the circumstances, the intrusiveness of this seizure was reasonably necessary for officer safety" and overturned the District Court's denial of defendant's suppression motion. Unlike the case of United States v. Prince, 157 F. Supp.2d 316, 325 (D. Del. 2001), The facts of this case are not even remotely close to those in Prince, in which the defendant was briefly handcuffed not to be frisked, but because of her strange actions during a traffic stop and her ability to interfere with the ongoing investigation of another person in an automobile. Id. All of the cases cited by the Government in relation to this remaining issue involve aggravating

10

circumstances where there was a legitimate basis for a police officer to handcuff an individual due to articulable concerns for officer safety. Such aggravating facts were not demonstrated in this case.

As there were other mechanisms to sufficiently provide for police officer safety, which were utilized in the stop of Mr. Roane, there was no reasonable basis to handcuff Mr. Roane as he was spread eagle across the hood of a patrol car.

### C.    Mr. Roane's admission of possessing the gun must be suppressed as it is a fruit of the poisonous tree.

Since Mr. Roane's statements were in relation to the resulting illegal seizure of the firearm on his person, his statements must be suppressed as a fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963).

**WHEREFORE**, Mr. Roane requests this Court to Order the suppression of the firearm seized, and his statements made to law enforcement which relate to this weapon.

Respectfully submitted,

 /s/ Christopher S. Koyste
Christopher S. Koyste, Esquire
709 Brandywine Boulevard
Bellefonte, Delaware 19809
(302) 762-5195
Email: ckoyste@koyste.com
Attorney for Corey Roane

DATED: May 21, 2008

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-113-SLR |
| | : | |
| COREY ROANE, | : | |
| | : | |
| Defendant. | : | |

## **CERTIFICATE OF SERVICE**

Undersigned Counsel certifies that the attached filing of Mr. Roane is available for public

viewing and downloading and was electronically delivered on May 21, 2008 to:

Leslie Wolf, Esquire
Assistant United States Attorney
United States Attorney's Office
1007 Orange Street, Suite 700
Wilmington, Delaware 19801

/s/ Christopher S. Koyste

Christopher S. Koyste, Esquire

709 Brandywine Boulevard

Bellefonte, Delaware  19809

(302) 762-5195

Email: ckoyste@koyste.com

Attorney for Corey Roane