IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 07-113-SLR |
| | ) | |
| COREY ROANE | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S REPLY BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE**

Defendant Corey Roane makes three erroneous assertions in support of his motion to suppress evidence. First, he contends that there was no basis for the police officers to initiate an investigatory stop. Second, defendant argues that the record shows he was handcuffed prior to being frisked and the discovery of a gun in the waistband of his pants. Finally, defendant asserts that regardless of the point at which he was handcuffed, there was no basis to justify the frisk.[1] Because each of these arguments is unsupported by the evidentiary record and legal principles, defendant's motion should be denied. The government has demonstrated by a preponderance of evidence that the stop and search were valid under *Terry v. Ohio*, 392 U.S. 1 (1968), and did not violate defendant's constitutional rights.

---

[1] Defendant also argues that his utterance following discovery of the gun that, "I just found that," should be suppressed as fruit of the poisonous tree. As a legal conclusion, the government does not argue to the contrary. The government, however, contends that the stop and frisk of defendant were legally proper and absent the suppression of the physical evidence, the statement is admissible in its case-in-chief at trial.

**1.     Officer Murdock had reasonable suspicion to stop defendant.**

The facts elicited at the evidentiary hearing demonstrated that Officer Murdock had the requisite "reasonable articulable suspicion of criminal activity" to initiate a *Terry* stop of defendant. *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006). The radio dispatch description of the robbery suspect contained six identifying features: (1) a black male; (2) on a ten-speed bicycle; (3) wearing a black t-shirt; (4) a black doo-rag; (5) shorts; and (6) heading North on DuPont. At the hearing, it was established and uncontroverted that defendant fit five of these six identifying factors— save for the fact that he was wearing pants and not shorts at the time of the stop. Moreover, the evidence was also undisputed that the stop took place just several minutes after the robbery only a few blocks from the scene— in close temporal and geographic proximity to the crime— and that defendant was the only individual in the area that Officer Murdock observed on a bicycle. Defendant's virtually identical match to the description of the robbery suspect and his proximity to the scene of the robbery provide a particularized and objective basis for the *Terry* stop. *See, e.g., United States v. Goodrich*, 450 F.3d 552, 562 (3d Cir. 2006); *United States v. Nelson*, 284 F.3d 472, 480 (3d Cir. 2002); *United States v. Nobles*, 2007 WL 2844894, at *2 (E.D. Pa. Sept. 27, 2007).

In his brief, defendant does not contest that he fit five of the six descriptors. Instead, he utterly fails to mention them, and focuses instead on the lone distinction between the dispatch description of the suspect and his own appearance— that he was wearing pants while the suspect was reported to be wearing shorts. Officer Murdock, however, articulated two reasons why he stopped defendant despite this discrepancy. First, that suspects sometimes change their clothes after commission of a crime, (12/19 Tr. 11), and second, that victims sometimes get clothing

descriptions wrong. (12/19 Tr. 52.) While Officer Murdock also testified that it is more typical that suspects disrobe, rather than add clothing, he recognized the possibility that a suspect might put on a pair of pants over shorts. (12/19 Tr. 52.) In focusing exclusively on the lone distinction, defendant attempts to hold the government to the inappropriate legal standard— one that requires perfection. The actual standard, however, requires only reasonableness, judged in light of the totality of the circumstances. *See United States v. Hensley*, 469 U.S. 221, 229 (1985) ("if police have a **reasonable** suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made) (emphasis added); *see also Hill v. California*, 401 U.S. 797, 804 (1971) ("sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment"). In the instant case, given the totality of the circumstances that included a closely matched physical description as well as geographic and temporal proximity to the scene of the crime, the stop of defendant was reasonable.[2]

### 2. The evidence shows defendant was frisked before being handcuffed.

During the evidentiary hearing, Officer Murdock unequivocally testified that he performed the pat down of defendant and discovered the gun prior to placing him in handcuffs. (12/19 Tr. 15-19; 3/17 Tr. 37.) This sequence of events is also in line with the report written by Officer Murdock on the date of defendant's arrest which concludes with defendant being "taken into custody," *i.e.* handcuffed, *after* discovery of the gun in defendant's waistband. (Def. Ex. 2.)

---

[2]The reasonableness of Officer Murdock's actions is corroborated. Not only did Officer Murdock conclude that a stop of defendant was reasonable based on his observations, a second patrol officer reached the same conclusion. At the time Officer Murdock saw defendant and initiated a stop, a second officer had also observed defendant and was in the process of turning his car around to conduct an investigatory stop. (12/19 Tr. 57-58.)

Defendant argues that it is Officer Rennewanz's initial report, and other recitations of the sequence of events based on that report, that should control in the instant case. Although an error was made, it does not dictate a finding that defendant was handcuffed prior to the frisk— a version of events that no witness testified to and no witness believes to be correct.[3] Officer Rennewanz testified that his report was in error and based upon an erroneous assumption about how events unfolded on August 1, 2007. Prior to writing the report, he did not discuss it (or the sequence of events) with Officer Murdock. (12/19 Tr. 68.) Nor did Officer Murdock review Officer Rennewanz's report prior to its submission. (12/19 Tr. 38.) The testimony at the hearing provided a reasonable and credible explanation for the error contained in Officer Rennewanz's report, he was focused on securing the area and the arrival of another unit. (12/19 Tr. 59.) Moreover, as discussed above, and in the government's opening brief, Officer Murdock's version of events has been consistent throughout the process. His testimony at the hearing is consistent with his report. Nor is there any dispute that Officer Murdock initiated the stop, performed the frisk, discovered the gun, and placed defendant in custody, and accordingly, and that he had the best vantage point from which to observe and recall the events of August 1, 2007.
[4] Testimony on the most salient fact— when defendant was handcuffed— was consistent and

---

[3]Similarly, the government's pre-hearing response to defendant's motion to suppress, filed on October 26, 2007, (D.I. 18), was premised upon what the "government expect[ed] the evidence will show."

[4]Defendant's concern that "leading questions were used when 'preparing'" the officers for the hearing is also unpersuasive. There is simply nothing untoward about preparing witnesses prior to their testimony— it is part of the normal course of business. Nor was there any evidence to support a finding that the officers were encouraged to alter their story to improve the chances of defeating the suppression motion. Officer Rennewanz stated the purpose of the preparation was to "come together on the report and the hearing." (2/20 Tr. 13) Despite defendant's repeated attempts to cast this phrase in a nefarious light, Officer Rennewanz testified

clear on this point over the course of the evidentiary hearing. Accordingly, the government has met its burden and established by a preponderance of the evidence that defendant was not handcuffed until after the gun was discovered during a pat-down search.

### 3.     The frisk of defendant was justified.

Defendant essentially argues that because he was cooperative when stopped by the police, Officer Murdock had no basis to perform a *Terry* pat-down. In doing so, defendant misapplies the controlling legal principles. Under *Terry*, a suspect's demeanor is immaterial if officers have reasonable suspicion to initiate the stop and frisk. Once Officer Murdock had determined that he had reasonable suspicion to stop defendant as a suspect in the robbery, he was similarly justified in performing a pat-down for weapons. As the Supreme Court has recognized, the police officer has an "immediate interest... in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." *Terry*, 392 U.S. at 23. There is no additional heightened requirement that an officer identify extenuating circumstances, additional bases, or specific and articulable facts specifically related to performing a frisk for weapons in conjunction with a valid investigatory stop. The same reasonable suspicion supports both the stop and frisk. *See, e.g., Terry*, 392 U.S. at 23; *United States v. Brown*, 159 F.3d 147, 149 (3d Cir. 1998); *United States v. Mendoza*, 2007 WL 1795663 at *1. As set forth above, Officer Murdock had reasonable suspicion to conduct an investigatory stop of defendant. That same reasonable suspicion provided justification for the

---

that this was his own choice of words and that in using those words he meant to "[p]rep for the hearing...that we would sit together and go over the report..... Coming together means we would all be sitting in the same room." (2/20 Tr. 13-14.) Despite defendant's attempts to elicit testimony to the contrary, Officer Rennewanz testified that the goal was to be correct in the sequence of events, not to testify to any particular sequence. (2/20 Tr. 18.)

pat-down search as well.[5]  Moreover, Officer Murdock testified that at the time he performed the pat-down search of defendant, he had no information as to whether a weapon had been displayed or otherwise used in the course of the robbery he was investigating.  (12/19 Tr. 20-21.)

Reasonable suspicion is the appropriate standard to evaluate the legality of the search because regardless of when defendant was placed in handcuffs, the stop was still an investigatory stop when the gun was discovered.  The circumstances of a particular stop may permit officers to employ techniques other than a simple stop and frisk, including handcuffing a suspect, so long as the technique is "reasonably related in scope to the circumstances which justified the interference in the first place."  *Terry*, 392 U.S. at 20; *see also United States v. Newton*, 369 F.3d 659, 675 (2d Cir. 2004); *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999); *United States v. Davis*, 2007 WL 2173394 at *8-*9 (E.D. Pa. July 27, 2007); *United States v. Prince*, 157 F. Supp.2d 316, 325 (D. Del. 2001).  Here, the reasonable suspicion supporting the stop was defendant's near identical resemblance to a suspect in a robbery, where the use of a weapon was unknown.  (12/19 Tr. 20-21.)  Under these circumstances it would have been reasonable for Officer Murdock to rely on the general (yet hugely important) concept of "officer safety," to briefly place defendant in handcuffs while he performed a frisk for weapons.

Defendant contends that none of the cases relied upon by the government are precisely on point with the instant case and that present in those cases were additional circumstances or

---

[5]Defendant's position that he did not act suspiciously and therefore there was no basis for performing the pat-down is undercut by the very circumstances of his own arrest.  Defendant reacted calmly to the arrest, but in fact was in possession of a gun at the time he was stopped.  If anything, this underscores the importance of an officer's right to frisk for weapons within the confines of a *Terry* stop and to take those steps "reasonably necessary to protect [his] personal safety."  *Hensley*, 469 U.S. at 235.

concerns not present here. Defendant tries to hold the government to a standard of proof which is inapplicable to the particularized facts of his case because only by holding the government to too high a standard can he argue that the stop, frisk and arrest were in violation of his constitutional rights. What defendant ignores is that the intrusions in those cases were also more significant than the hypothetical minimal intrusion on defendant— being handcuffed for less than one minute prior to being placed under arrest for the illegal possession of a firearm. (12/19 Tr. 19-20.) *See, e.g., United States v. Edwards*, 53 F.3d 616, 620 (3d Cir. 1995) (considering length of detention in evaluating whether *Terry* stop or arrest). Proportionality must be considered, and if Officer Murdock had decided to place defendant in handcuffs for a brief time his decision would have been "reasonably related in scope to the circumstances which justified the intrusion in the first place." *Terry*, 392 U.S. at 20.

WHEREFORE, for the reasons set forth above and in the post-hearing brief in opposition, the United States respectfully requests that the Court deny defendant's Motion to Suppress Evidence and Statements.

Dated: June 3, 2008                                            Respectfully submitted,

                                                               COLM F. CONNOLLY
                                                               United States Attorney


                                                BY:    /s/ Lesley F. Wolf
                                                       Lesley F. Wolf
                                                       Assistant United States Attorney
                                                       The Nemours Building
                                                       1007 Orange Street, Suite 700
                                                       Wilmington, Delaware 19899-2046
                                                       (302) 573-6277
                                                       lesley.wolf@usdoj.gov