IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. No. 07-113-SLR |
| | ) |
| COREY ROANE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

**I. BACKGROUND**

Defendant Corey Roane has moved to suppress a firearm and a statement made in relation to his arrest on August 1, 2007. (D.I. 15) Defendant contends the facts elicited at the evidentiary hearings do not establish reasonable suspicion or probable cause to support the stop, frisk or seizure. He argues his statement should be suppressed as fruit of the illegally seized firearm. (D.I. 37) Evidentiary hearings were held on December 19, 2007, February 20, 2008 and March 17, 2008 with four witnesses testifying.[1] Post-hearing briefing is complete. (D.I. 37, 41, 42) The court has jurisdiction pursuant to 18 U.S.C. § 3231. For the reasons that follow, defendant's motion to suppress is denied.

**II. FINDINGS OF FACT**

Pursuant to Fed. R. Civ. P. 12(d), the following constitutes the court's essential

---

[1] Testifying for plaintiff were Wilmington Police Officers Mark Murdock ("Murdock") and Michael Rennewanz ("Rennewanz") and Special Agent Paul Gemmanto of the Bureau of Alcohol Tobacco Firearms and Explosives. Thomas Monahan, a private investigator, testified on behalf of defendant.

findings of facts as developed during the evidentiary hearings.

1. On August 1, 2007, at approximately 3:00 p.m., the Wilmington Police Department ("WPD") received a 911 call reporting that a robbery had just occurred at Temptations Ice Cream Parlor ("Temptations") in the Trolley Square area of Wilmington, Delaware. (D.I. 25 at 6) The robbery victim provided a description of the suspect which was broadcast over the WPD radio to units dispatched to Temptations. (Id. at 4-6) Based on the robbery victim's account, the suspect was described as a black male riding a ten speed bicycle heading north on DuPont Street, wearing a black t-shirt, shorts and a black doo-rag. (Id. at 7-8; GX1)

2. Murdock was driving alone in a marked patrol vehicle in the vicinity of Temptations when he responded to the dispatch call.[2] (Id. at 9-10) Within five minutes of the dispatch call, Murdock observed a black male[3] wearing a black doo rag riding a ten speed bicycle heading north on DuPont, about two blocks from the scene of the robbery. (Id. at 10-12) Murdock did not see any other bicycle riders in the area. (Id. at 11) Murdock noticed that defendant was wearing jeans instead of shorts. (Id.) Based on his training and experience, Murdock knew that suspects sometimes change their clothing or appearance after committing a crime in order to evade police. (Id. at 11, 52) Murdock also knew that victims sometimes give inaccurate descriptions of a suspect's clothing. (Id. at 52) Given that the robbery had occurred just moments before Murdock

---

[2] Murdock has been employed as a patrol office with WPD for approximately three years. (Id. at 3) His responsibilities include patrolling designated areas of Wilmington, issuing traffic violations and investigating crimes. (Id. at 4)

[3] Murdock identified this individual as defendant. (Id. at 12)

2

spotted defendant in an area less than two blocks from Temptations and defendant almost matched the description of the suspect, Murdock initiated a stop of defendant. (Id. at 11-12)

3. As Murdock approached, defendant rode his bicycle across traffic heading west as Murdock approached from the east. (Id. at 12) Contemporaneously, Rennewanz, driving a marked police car in the area, observed Murdock and defendant; Rennewanz negotiated a U-Turn and headed north to assist Murdock. (Id. at 15, 12)

4. Murdock stopped defendant near the intersection of DuPont and Lovering Avenue. (Id. at 12) Defendant, straddling the bicycle, stood facing Murdock about two feet from the patrol car. (Id. at 12, 13, 15; GX2) Murdock asked defendant to step off the bicycle. (Id. at 15) Defendant complied and was informed by Murdock that he matched the description of someone who had just committed a robbery in Trolley Square. (Id. at 43, 15) Murdock then grabbed hold of defendant's wrist and guided him toward the police car. (Id. at 15) When they reached the car, defendant placed his hands on top of the hood. Murdock testified that he took hold of defendant to gain control, for officer safety and for safety of people in the area. (Id. at 16) By this time, Rennewanz had parked his police car and stood about twelve feet away watching the area to ensure it was secure. (Id. at 15-18, 58-59) When another police unit arrived shortly thereafter, Rennewanz spoke with the third officer. (Id. at 59)

     5. Murdock conducted a pat down search of defendant.[4] Murdock testified that he conducted the pat down to ensure officer safety as Murdock did not know whether a weapon was used to commit the robbery at Temptations. (Id. at 17, 18, 20-21) On the right side of defendant's waist, Murdock felt the butt of a gun.[5] (Id. at 16) Murdock removed the gun, handed it to Rennewanz and handcuffed defendant. (Id. at 17, 12-19) Murdock then placed defendant in the back of his patrol car and notified dispatch. (Id. at 12-19) Murdock testified that about 30-40 seconds elapsed between the stop of defendant to when defendant was placed in handcuffs. (Id. at 19; GX1)

     6. Murdock drove defendant to Temptations in order for the robbery victim to positively identify him. (Id. at 24-25) After the robbery victim concluded that defendant was not the robbery suspect, defendant was placed under arrest for possession of a concealed weapon. (Id. at 25)

### III. STANDARD OF REVIEW

     1. Once a defendant has challenged the legality of a warrantless search and seizure, the burden is on the government to demonstrate that the acts were constitutional. United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). The burden

---

[4] Murdock and Rennewanz testified credibly that defendant was patted down prior to being handcuffed. Both testified that a police report written by Rennewanz regarding this case was inaccurate in that it stated that defendant was handcuffed prior to the pat down search. (Id. At 37-38, 61-62; D.I. 32 at 11; DX 1, DX2, DX3) Rennewanz explained that his report was inaccurate because he did not conduct the stop, pat down or arrest. He arrived at the scene to assist Murdock by making sure the area was secure. (Id. at 59)

[5] Ostensibly, at this point, defendant made a statement regarding the gun. Defendant seeks to suppress the statement as a fruit of the illegally seized gun.

4

of proof is a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 178 n. 14 (1974).

2. The court is charged with reviewing the "credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." United States v. McKneely, 6 F.3d 1447, 1453 (10th Cir. 1993); Government of the Virgin Islands v. Gereau, 502 F.2d 914, 921 (3d Cir.1974).

## IV. CONCLUSIONS OF LAW

1. The Fourth Amendment of the United States Constitution prevents "unreasonable searches and seizures." A seizure made pursuant to a warrant based on probable cause is generally reasonable. Katz v. United States, 389 U.S. 347, 356-357 (1967). Warrantless searches are presumed unreasonable. Id.

2. A police officer, however, may conduct a brief, investigatory stop whenever he has a reasonable articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968); Illinois v. Wardlow, 528 U.S. 119, 123 (2000); United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000). "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a Terry stop." United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006).

3. To determine whether a stop was justified, the totality of the circumstances surrounding the stop must be evaluated. United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004); United States v. Sokolow, 490 U.S. 1, 8 (1989). The court "must view

the circumstances surrounding the stop in their entirety, giving due weight to the experience of the officers." United States v. Rickus, 737 F.2d 360, 365 (3d Cir. 1984). Deference is accorded to an "officer's judgment of whether criminal activity is taking place with an understanding that 'whether an officer has reasonable suspicion to warrant a stop . . . is often an imprecise judgment.'" United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006). The court should defer to the officer's observations and judgments in reviewing the totality of the circumstances because officers "draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, 273 (2002)

     4. Based on the totality of the circumstances, the court concludes that Murdock had reasonable suspicion to stop defendant regarding the robbery at Temptations. To that end, the court finds Murdock's manner and demeanor during testimony credible. His testimony establishes that, within five minutes of receiving a radio broadcast about the robbery, he observed defendant riding a bicycle about two blocks from Temptations. Geographic and temporal proximity of the suspect to the crime scene is an important factor to consider in determining validity of a stop. United States v. Goodrich, 450 F.3d 552, 562 (3d Cir. 2006). Moreover, Murdock observed that defendant met almost all of the descriptors provided by the robbery victim. The only difference, jeans instead of shorts, is inconsequential in light of Murdock's testimony that crime victims sometimes provide inaccurate descriptions of a suspect's clothing as well as Murdock's experience with suspect's changing clothing to evade police.

5. An officer effectuating a reasonable investigatory stop should have the opportunity to protect himself from assault by a suspect. Terry v. Ohio, 392 U.S. at 24. To that end, the officer may conduct a limited protective pat down search of a suspect's outer clothing for concealed weapons when the suspect gives the officer reason to believe that he may be armed and presently dangerous. Id. at 27-30. A primary purpose of such a search is the protection of the law enforcement officer. Id. at 24. For the search to be justified, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences drawn from those facts, reasonably warrant the intrusion." Id. at 21. The pat down must be limited in scope to a search for weapons. Id. at 26.

6. Having concluded that Murdock had reasonable suspicion to stop defendant for being a participant in a robbery, the record likewise supports Murdock's decision to conduct a pat down of defendant. Significantly, the uncontradicted record establishes that Murdock did not know whether the Temptations robbery suspect had used a weapon in the commission of the crime. In fact, Murdock testified that he conducted the pat down for his safety as well as the safety of Rennewanz. The court concludes Murdock's pat down was reasonable and consistent with the mandates of Terry.

7. Even assuming that defendant was handcuffed prior to the pat down search, the court's conclusions are unchanged.[6] "When police officers conduct a Terry stop,

---

[6] Although defendant has challenged the conduct of the testifying law enforcement officers, the court finds that the record does not support an inference of misconduct. "Credibility determinations may be influenced by factors such as a witness' demeanor, his tone of voice and other matters not subject to appellate scrutiny." Government of the Virgin Islands v. Gereau, 502 F.2d at 921. Murdock, the officer with the best vantage point of the events, consistently testified that defendant was patted

'they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo.'" United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1995) (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)). When considering whether a Terry stop has escalated into an arrest, "the reasonableness of the intrusions is the touchstone, balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the suspect." Baker v. Monroe Twp., 50 F.3d 1186, 1192 (3d Cir. 1992). There is no per se rule that handcuffing people constitutes an arrest. United States v. Prince, 157 F. Supp.2d 316, 325 (D. Del. 2001).

8. At bar, Murdock had reason to believe that defendant had committed a robbery moments before he was stopped. Although he did not know whether a weapon was involved, it is not unreasonable to infer that some type of force was used to effect the robbery. Under these circumstances, the application of handcuffs would have been reasonable to ensure officer safety. Moreover, considering that the stop, pat down and handcuffing, regardless of order, occurred in under a minute, the intrusion defendant suffered was very brief and minimal.

## V. Conclusion

At Wilmington this  1st  day of July, 2008,

IT IS ORDERED that:

1. Defendant's motion to suppress is denied. (D.I. 15)

---

down and then, after finding the gun, handcuffed. Murdock's testimony was responsive and clear. Rennewanz explained, to the court's satisfaction, that his report was wrong because he was not as concerned with the sequence of events as he was concerned with ensuring officer safety at the scene and with the arrival of another police unit.

8

2. A telephonic status conference is scheduled for **Monday, July 28, 2008** at **9:00 a.m.**, with the court initiating said call.

3. The time between this order and **July 28, 2008** shall be excluded under the Speedy Trial Act in the interests of justice.  18 U.S.C. § 3161(h)(8)(A).

                                        _____
                                        United States District Judge